IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TONI LYNN WICKLINE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-608 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| MICHAEL J. ASTRUE, | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 6) will be denied, and Defendant's Motion for Summary Judgment (ECF No. 8) will be granted.

Toni Lynn Wickline ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). An Administrative Law Judge ("ALJ") denied benefits to Plaintiff on May 5, 2011, following an administrative hearing. (R. at 20 – 73).[1] Subsequently, a request for review by the Appeals Council was denied, and Plaintiff filed the present Complaint in this Court on May 9, 2012. (R. at 1 – 5; ECF No. 3). Defendant filed an Answer on July 13, 2012. (ECF No. 4). Cross-Motions for Summary Judgment followed. (ECF Nos. 6, 8).

---

[1] Citations to ECF Nos. 5 – 5-14, the Record, *hereinafter*, "R. at __."

The ALJ determined that Plaintiff had medically determinable severe impairments in the way of diabetes, hypertension, thrombocytopenia, obesity, bipolar disorder, borderline personality disorder and post-traumatic stress disorder. (R. at 22). However, she had the functional capacity to perform light work, except that she could only occasionally climb, balance, stoop, kneel, crouch and crawl, and could not work in proximity to occupational hazards such as unprotected heights, dangerous machinery, ropes, ladders and scaffolds. (R. at 24). She was further limited to no more than simple, routine, repetitive tasks in a low stress environment requiring no complex decision making, high volume productivity requirements or more than very infrequent unexpected changes. (R. at 24). Plaintiff required a stable work atmosphere with no contact with the public, only occasional superficial contact with co-workers and only occasional interaction with supervisors. (R. at 24).

Consistent with the testimony of the vocational expert, the ALJ found that Plaintiff qualified for a significant number of jobs in existence in the national economy, and was not eligible for DIB or SSI. (R. at 30 – 31). Plaintiff objects to the determination of the ALJ, arguing that he erred in failing to give proper consideration to Plaintiff's treatment history and all the findings of the consultative examiner, and in failing to fully credit Plaintiff's subjective complaints of limitation. (ECF No. 7 at 15 – 21). Defendant counters that the findings of the consultative examiner were not entitled to full weight, because they were both internally inconsistent and inconsistent with the objective medical evidence on record, and that Plaintiff's treatment record did not provide evidence of more than moderate limitation. (ECF No. 9 at 12 – 7). Further, Defendant claims that Plaintiff's subjective complaints also were not completely credible due to conflicts with objective medical evidence. (ECF No. 9 at 17 – 22). The Court agrees with Defendant.

2

In order to qualify for SSI, a claimant must prove that he or she is incapable of engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met this requirement. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). Assuming a claimant meets his or her burden at Steps 1 through 4, Step 5 places a burden upon the Commissioner to show that a particular claimant is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

To support her first argument, Plaintiff asserts that she was incapable of functioning at a level that would allow her to work eight hours per day, five days per week, and cites her brief hospitalization, follow-up partial hospitalization and continuous treatment with a therapist and psychiatrist. (ECF No. 7 at 16 – 18). While Plaintiff certainly experienced impairment and limitation as a result of mental illness, her conditions are not as severe as Plaintiff would have the Court believe. Rochester Staunton Clinic records from January 2008 through February 2011, generally included findings that Plaintiff's mood was stable, her appearance was appropriate, her psychomotor activity was normal, her speech was normal, her affect was normal and euthymic, she was cooperative, had organized behavior, had no paranoia or hallucinations, was fully orientated, and had good insight. (R. at 226 – 72, 462 – 506). Her diagnoses included depressive disorder and anxiety. (R. at 226 – 72, 462 – 506). Plaintiff was noted to make fair/good progress, despite some ups and downs, and exhibited positivity and stable mood. (R. at 226 – 72, 462 – 506). Fluctuations in her mental condition typically were associated with issues with friends, her girlfriend, family members, and other situational factors, and Plaintiff was noted to require development of coping mechanisms. (R. at 226 – 72, 462 – 506).

Plaintiff was compliant with her medications and denied suicidal ideation. (R. at 226 – 72, 462 – 506). Global assessment of functioning[2] ("GAF") scores of 55 – 65 were consistently recorded, most often over 60. (R. at 226 – 72, 462 – 506).

Plaintiff was voluntarily hospitalized from July 29, 2009 until August 4, 2009, for a claimed passive death wish. (R. at 361 – 78). Plaintiff blamed her condition on the recent move of her adult daughter into her home. (R. at 361 – 78). She further claimed that she was never actively suicidal. (R. at 361 – 78). Plaintiff attended individual and group therapy, and reported feeling better on the day of her discharge. (R. at 361 – 78). She was observed to have a brighter affect, was fully oriented, was pleasant and cooperative, had normal speech, had good memory, had fair/good insight and judgment, and had no symptoms of psychosis. (R. at 361 – 78). Plaintiff was diagnosed with bipolar disorder, post-traumatic stress disorder, panic disorder and personality disorder. (R. at 361 – 78). She was assessed a GAF score of 50. (R. at 361 – 78). She was to follow up at Staunton Clinic. (R. at 361 – 78).

Following her hospitalization, she participated in a partial hospital program at Staunton Clinic. (R. at 494). She began with a GAF score of 40, and ended with a score of 55. (R. at 494). Upon her discharge from the program, she was said to have made good progress

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 61 – 70 may have "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning, but generally functioning pretty well" and "has some meaningful interpersonal relationships;" of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 41 – 50 may have "[s]erious symptoms (*e.g.*, suicidal ideation …)" or "impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.*

toward her goals – she improved her mood, concentration, self-esteem, energy and stress level. (R. at 494).

Plaintiff also sought treatment at Aurora Rehabilitation ("Aurora") between March 2010 and January 2011. (R. at 411 – 61). Plaintiff complained of an inability to manage her anger, bipolar disorder, and relationships with others, and she had low self-esteem. (R. at 411 – 61). It was recommended that she participate in site-based services five times per week, for thirty hours per week. (R. at 411 – 61). There was no evidence that Plaintiff engaged in therapy at that level. However, Plaintiff did participate in various therapy groups while at Aurora. (R. at 411 – 61). Plaintiff actively shared in group therapy, socialized with other group members during lunch and was able to play games with group members. (R. at 411 – 61). She also was able to attend Aurora's Christmas party. (R. at 411 – 61). She began to recognize positive changes in herself, and was able to say "I like myself." (R. at 411 – 61).

While there is no doubt that Plaintiff experienced limitation from a long history of mental impairment, the ALJ's consideration of this history, as well as Plaintiff's gradual improvement over time, bolstered his conclusion that Plaintiff could work. (R. at 24 – 29). Moreover, the December 7, 2009 findings of state agency evaluator Edward Jonas, Ph.D., who in a Mental Residual Functional Capacity Assessment ("RFC") and Psychiatric Review Technique indicated that Plaintiff's record demonstrated no more than moderate difficulties arising from affective disorders and personality disorders. (R. at 336 – 53). He based these conclusions upon his review of a record, which showed that while Plaintiff suffered from a number of mental disorders, she completed approximately fifteen years of education culminating in a nurse's aide certification, had intact memory processes, had the ability to make simple decisions, was outgoing, could care for herself and could travel independently. (R. at 336 – 53).

5

Plaintiff, however, contends that reliance upon Dr. Jonas's findings was misplaced in light of a clinical psychological review of Plaintiff by Lisa Elizabeth Wiens, Psy.D., on December 14, 2009, on behalf of the Bureau of Disability Determination. (R. at 326 – 34). In it, she diagnosed Plaintiff with bipolar disorder and borderline personality disorder, and assigned a GAF score of 40. (R. at 326 – 34). Dr. Wiens believed that Plaintiff would have extreme limitation in carrying out detailed instructions, and interacting appropriately with the public, co-workers, and supervisors. (R. at 326 – 34). Plaintiff would have marked limitation in carrying out short, simple instructions, and responding appropriately to work pressures in a usual work setting and changes in a routine work setting. (R. at 326 – 34).

Based upon observation and review of Plaintiff's treatment records, Dr. Wiens noted that Plaintiff was spontaneous and uninhibited, had difficulty with impulse control, and had strained personal relationships. (R. at 326 – 34). Yet, Plaintiff did demonstrate good hygiene, productive thought, very good concentration, above average abstract thinking and performed serial 7's quickly and accurately. (R. at 326 – 34). Dr. Wiens opined that while Plaintiff's mental health had been improving with therapy, she still exhibited significant dysfunction in day-to-day life. (R. at 326 – 34). Management of anger, aggression and depression – while under better control than earlier points in her adulthood – were likely to see only incremental, if any, improvement. (R. at 326 – 34). Dr. Jonas felt that Dr. Wiens's severe findings were an overestimate of functional limitations based upon exaggerated subjective complaints. (R. at 336 – 53).

The United States Court of Appeals for the Third Circuit "has recognized that there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). While it is understood that the ALJ is required to analyze and

choose between conflicting medical accounts – and that the ALJ's findings are not expected to be as rigorous as the analyses of a medical professional or scientist – if the ALJ has not adequately explained his or her treatment of obviously probative evidence, the court cannot say whether substantial evidence supports an ALJ's conclusion. *Id.* at 705 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

The ALJ was persuaded by Dr. Jonas's findings for several reasons. One reason was the assessment by Dr. Wiens was heavily influenced by Plaintiff's subjective complaints. (R. at 29). However, the ALJ was primarily convinced by Dr. Jonas because of internal inconsistencies in Dr. Wiens's assessment. Dr. Wiens noted Plaintiff's outgoing nature, good hygiene, good eye contact, productive thought, abstract thinking, excellent concentration, lack of anxiety and stable mood, yet still concluded that she would be significantly limited interacting with others and carrying out simple work in a usual, routine setting. (R. at 28). The ALJ also did not find the objective medical record to mesh with Dr. Wiens's more severe conclusions. The ALJ was entitled to make this determination, and rely instead upon Dr. Jonas. *See Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.' State agent opinions merit significant consideration as well.")

7

(citations omitted). The ALJ also went to lengths to accommodate these more severe findings by reducing exposure to the public, co-workers and supervisors, and by limiting potential work to the most stable environments requiring simple, routine work without quota-based or other requirements that may induce stress. These decisions by the ALJ were supported by substantial evidence.

As to Plaintiff's subjective complaints, the ALJ did not find them persuasive because the objective medical record did not reflect such deficits in functional capacity. Neither did the findings of Dr. Jonas comport with Plaintiff's allegations. As discussed, there was ample evidence to rely on Dr. Jonas, and Plaintiff's subjective complaints – like the more severe findings of Dr. Wiens – simply were not reflected by the objective medical record.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**ECF No. 6**) is **DENIED**, Defendant's Motion for Summary Judgment (**ECF No. 8**) is **GRANTED**.

January 28, 2013                                        s\Cathy Bissoon
                                                                             Cathy Bissoon
                                                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record